IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NA'QUAN THOMAS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-4944 |
| | : | |
| SOLERA SENIOR LIVING LLC, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**COSTELLO, J.**                                                                                                  **OCTOBER  10 , 2025**

Na'Quan Thomas commenced this *pro se* civil action alleging employment discrimination and state law tort claims. He seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Thomas leave to proceed *in forma pauperis* and permit him the option of filing an amended complaint or proceeding only with his retaliation claim against Solera Senior Living LLC.

**I.    FACTUAL ALLEGATIONS**[1]

Thomas names as Defendants (1) Solera Senior Living LLC ("Solera") and the following Solera employees: (2) Rebecca Kotwas, Health & Wellness Director; (3) Shanell Hamilton, People Relations Director; and (4) Lewana Dupree, Director of Human Resources. (Compl. at 1.) Plaintiff is an African American man who was employed as a resident assistant at Echo Lake Senior Living ("Echo Lake"), a facility operated by Solera. (*Id*. ¶¶ 1-2.) On August 16, 2025, Thomas responded to a call from a resident named Mrs. Gannon, who requested help changing into her pajamas. (*Id*. ¶¶ 11-12.) Thomas asked Mrs. Gannon if she would prefer to wait for a

---

[1] The following allegations are taken from the Complaint (ECF No. 2). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

female aide, but she declined.  (*Id*. ¶ 12.)  When Thomas began assisting Mrs. Gannon, her husband, Mr. Gannon, became irate, yelled and cursed at Thomas, called him the n-word with an expletive, and slammed a door into Thomas's leg.  (*Id*. ¶¶ 12-14.)  Two other employees witnessed the incident and later provided written statements corroborating Thomas's account to Defendant Hamilton as part of an investigation related to Thomas's suspension.  (*Id*. ¶ 15.)

When Thomas reported for work on August 19, 2025, Thomas was pulled aside by his supervisor, Defendant Kotwas, who told Thomas that Mr. Gannon had "reported" him.  (*Id*. ¶ 17).  Thomas alleges that Kotwas "did not ask Plaintiff for his side of the story, did not ask about witnesses, and did not investigate.  Instead, she informed Plaintiff that he could not work on the first floor or in the Gannons' room, effectively punishing him without inquiry."  (*Id*. ¶ 18.)  Thomas was not asked for his account of the events but, after he "protested," Kotwas "reluctantly allow[ed] him to write a statement."  (*Id*. ¶¶ 18-19.)  Thomas does not specify what information he included in the statement.  He asserts that "[o]ther staff had long reported Mr. Gannon as verbally abusive to employees, but Rebecca had covered up his behavior."  (*Id*. ¶ 20.)

The following day, August 20, 2025, Defendant Hamilton notified Thomas a few hours before his scheduled shift that he was being suspended "pending investigation."  (*Id*. ¶¶ 21-22.)  Hamilton did not advise Thomas of the reason for the suspension nor provide any documentation.  (*Id*. ¶ 23.)  Over the next several days, Thomas called and emailed Hamilton daily, inquiring as to the reason for the suspension and the status of the investigation, but she ignored his messages.  (*Id*. ¶¶ 24-27.)  Finally, Thomas received a letter from Solera, dated August 25, 2025, terminating his employment.  (*Id*. ¶ 30.)  He asserts the employer "terminated [me] without a legitimate reason."  (*Id*. ¶ 33.)  Thomas does not say what reason(s) Solera gave, if any, for the termination or why it was not legitimate, but he states elsewhere that the

"Defendants falsely stated or implied that Plaintiff 'randomly entered a female resident's room' without consent or policy basis." (*Id*. ¶ 41.)

Thomas asserts claims of racial discrimination pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*., 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"), alleging disparate treatment, a hostile work environment, retaliation, and wrongful termination. (*Id.* at 1, 8-9.) He also alleges wrongful termination under Pennsylvania state law, and state law claims for defamation and "negligent and willful failure to investigate." (*Id*. at 8-10.) He seeks monetary damages, and injunctive and declaratory relief. (*Id*. at 10-11.)

## II.     STANDARD OF REVIEW

Because Thomas appears to be unable to pay the fees to commence this civil action, the Court will grant him leave to proceed *in forma pauperis*. Accordingly, his Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to screen and dismiss the Complaint if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021),

3

*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted). To state an employment discrimination claim, as with any other claim, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 213 (quotations omitted).

The Court construes the allegations of a *pro se* complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). This requires the Court to remain flexible, especially considering a litigant's *pro se* status. *Id.* The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

### III. DISCUSSION

#### A. Employment Discrimination Claims[2]

Thomas asserts employment discrimination claims pursuant to Title VII, §1981, and the PHRA.[3] Title VII "proscribe[s] discrimination in employment based on several personal

---

[2] A plaintiff pursuing an employment discrimination claim in federal court must first exhaust administrative remedies before filing a lawsuit. *See generally Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013); *Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir. 1999); 42 U.S.C. § 2000e-5 (setting forth Title VII procedures for exhausting remedies with the EEOC). For Title VII claims, this requires a plaintiff to first file a charge with the EEOC alleging that his or her employer has engaged in an unlawful employment practice. *Itiowe v. NBC Universal Inc.*, 556 F. App'x 126, 128 (3d Cir. 2014) (*per curiam*) (citing *Occidental Life Ins. Co. of California v. E.E.O.C.*, 432 U.S. 355, 359 (1977)). After investigating, the EEOC will issue a "right-to-sue" letter if it determines that reasonable cause does not exist to pursue the matter. *See id*. The plaintiff may present this right-to-sue letter to the federal court to demonstrate administrative exhaustion. *Id*.; *see also Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). Similarly, a plaintiff seeking to assert claims under the PHRA must first file an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC"). *See Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 (3d Cir. 1997). A claimant cannot seek judicial remedies under the PHRA without first exhausting administrative remedies with the PHRC. *Tlush v. Manufacturers Res. Ctr.*, 315 F. Supp. 2d 650, 656 (E.D. Pa. 2002); *Clay v. Advanced Comput. Applications, Inc.*, 559 A.2d 917, 920 (Pa. 1989). A claimant who files a charge with the PHRC must generally wait one year before filing suit in civil court, during which time the agency has exclusive jurisdiction over his claims. *Clay*, 559 A.2d at 920.

Thomas has not alleged that he filed a charge of discrimination with either the EEOC or the PHRC. Because failure to exhaust is an affirmative defense and not a jurisdictional impediment, *Itiowe*, 556 F. App'x at 128, the Court will not address it at this stage of the proceedings. *Williams v. Runyon,* 130 F.3d 568, 573 (3d Cir. 1997) (defendant "bears the burden of pleading and proving" a failure to exhaust). Thomas should be mindful of the administrative exhaustion requirement in drafting any amended complaint. *See Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3d Cir. 1984) (finding the exhaustion requirement was satisfied by the EEOC's issuing a right-to-sue letter that "was not issued until after the complaint was filed"); *Tlush*, 315 F. Supp. 2d at 654 ("While the attainment of a right-to-sue letter from the EEOC is a condition precedent to filing Title VII and ADA suits, the failure to obtain notice of the right to sue is a curable defect.").

[3] "In employment discrimination cases, [§ 1981] claims are subject to the same analysis as discrimination claims under Title VII of the Civil Rights Act of 1964." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009).

characteristics" including race, color, religion, sex, or national origin.[4]  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)).  Title VII only creates liability for employers that violate its provisions, and individual employees may not be sued under Title VII.  *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir. 1996) ("[W]e are persuaded that Congress did not intend to hold individual employees liable under Title VII.").  Accordingly, the Title VII claims against Rebecca Kotwas, Shanell Hamilton, and Lewana Dupree will be dismissed with prejudice.

There is, however, no such bar to claims against individual employees under § 1981 and the PHRA.  *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 541 (D.N.J. 2000) (noting that individual employees are liable under § 1981); *see* 43 Pa. Cons. Stat. § 955(d), (e); *Dici v. Pennsylvania*, 91 F.3d 542, 552-553 (3d Cir. 1996) (concluding that the plaintiff's supervisor was "a proper defendant under § 955(e) and might be liable for aiding and abetting discriminatory practices, as [plaintiff had] pleaded facts which, if true, could impose liability for violations of the PHRA"); *see also Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) (noting that, under the PHRA, "in the appropriate factual scenario, an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his own direct acts of

---

[4] Discrimination claims under federal anti-discrimination laws and the PHRA are generally evaluated under the same standards.  *See Stewart v. Rutgers, The State University*, 120 F.3d 426, 432 (3d Cir. 1997) (holding that discrimination claims under § 1981 and the PHRA involving disparate treatment are evaluated using the same burden-shifting framework); *Knabe v. Boury Corp.*, 114 F.3d 407, 410 n. 5 (3d Cir. 1997) (indicating that employer liability under the PHRA follows the standards set out for employer liability under Title VII); *Butler v. Arctic Glacier USA*, 213 F. Supp. 3d 711, 716 (E.D. Pa. 2016) (race discrimination claims under Title VII, § 1981, and the PHRA involve the "same legal analysis") (citing cases).

discrimination or for his failure to take action to prevent further discrimination by an employee under supervision" (citing *Dici*, 951 F. 3d at 552-53)).

### 1. Discriminatory Termination

"A plaintiff alleging a Title VII claim for discriminatory discharge must allege that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged; and (4) the employment action suggests an inference of discrimination because of her membership in the protected class[.]" *Reese v. Horizon Blue Cross Blue Shield of New Jersey*, No. 08-1382, 2008 WL 5188853, at *2 (D.N.J. Dec. 10, 2008) (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996). However, to plead a claim under Title VII, the complaint need not allege each element of a *prima facie* case as set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Fowler*, 578 F.3d at 213 ("A determination whether a *prima facie* case has been made, however, is an evidentiary inquiry – it defines the quantum of proof plaintiff must present to create a rebuttable presumption of discrimination . . . . Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." (internal citation and quotation marks omitted)). Rather, a complaint must allege facts that provide fair notice of a plaintiff's claim and demonstrate a plausible right to relief. *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").

Thomas asserts that, "Defendants disciplined and terminated [him] based on a false complaint from a resident's husband, without evidence, while failing to discipline non-Black/female employees for similar or worse conduct." (Compl. ¶¶ 35-36.) He also contends

the investigation conducted by Defendant Kotwas reflected racial basis, stating, "[o]ther staff had long reported Mr. Gannon as verbally abusive to employees, but Rebecca had covered up his behavior. By siding with the resident against Plaintiff and disregarding witnesses, Rebecca treated Plaintiff differently due to race." (*Id.* ¶ 20.)

Thomas's allegations of discriminatory termination are not plausible. When alleging the existence of similarly situated individuals, a plaintiff "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal. *Young v. Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 354-55 (3d Cir. 2005). Thomas's assertion that Defendants "fail[ed] to discipline non-Black/female employees for similar or worse conduct" is conclusory and fails to raise "a reasonable expectation that discovery will reveal evidence of comparators . . . who were not members of the same protected class and who were treated more favorably under similar circumstances, or other circumstantial evidence showing a causal nexus between [his] membership in a protected class and the adverse employment action suffered." *Robinson v. Am. Reading Co.*, No. 24-5608, 2025 WL 1243058, at *4 (E.D. Pa. Apr. 29, 2025). Thomas's assertion that Kotwas treated him differently due to his race by crediting Mr. Gannon's account of the August 16 incident is likewise conclusory. Nor does Thomas allege other circumstances giving rise to an inference of discrimination, such as expressions of racial animus by Kotwas or another Solera employee involved in his discipline. Because the allegations are undeveloped, the Court will grant Thomas leave to amend if he can assert additional facts to support his discriminatory termination claim.

      **2.**      **Hostile Work Environment**

Thomas uses the term "hostile work environment" in the first paragraph of his Complaint but does not otherwise allege how he experienced a hostile work environment. (Compl. ¶ 1.) This type of passing reference is not sufficient to allege a plausible claim. *Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023), *cert. dismissed sub nom. Brown v. Pennsylvania*, 144 S. Ct. 272 (2023), *reconsideration denied*, 144 S. Ct. 417 (2023); *see also Campbell v. LVNV Funding, LLC*, No. 21-5388, 2022 WL 6172286, at *7, n.10 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)). To plead a plausible hostile work environment claim, a plaintiff must allege: (1) he suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014). "In some circumstances, an employer may be liable under Title VII for the harassing conduct of third parties if the employer was aware of the conduct and failed to take reasonable remedial action in response." *Robinson*, 2025 WL 1243058, at *4 (citing *Johnson v. Bally's Atl. City*, 147 F. App'x 284, 285–86 (3d Cir. 2005); *see Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1074 (10th Cir. 1998)); *see also Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015) ("an employer may be liable for hostile work environments created by co-workers and

9

third parties 'if it knew or should have known about the harassment and failed to take effective action to stop it . . . [by] respond[ing] with remedial action reasonably calculated to end the harassment.'").

"Under Title VII, a hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Starnes*, 971 F.3d at 428 (citations and quotation marks omitted.)  However, "Title VII imposes no general civility code" as it "does not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or generally boorish conduct." *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (internal quotations omitted).  "Whether an environment is hostile requires looking at the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)) (quotation marks omitted).

Thomas's hostile work environment claim appears to be based on a single instance of racial harassment in the workplace, in which a resident called him by a racial epithet while cursing and pushing a door that struck his leg.  Courts have repeatedly concluded that the "the use of the [n-word] in the workplace is particularly odious and offensive." *Anderson v. Phoenix Beverages, Inc.*, No. 12-1055, 2017 WL 9481014, at *14 (E.D.N.Y. July 17, 2017), *report and recommendation adopted*, 2017 WL 4767447 (E.D.N.Y. Sept. 30, 2017); *see also Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, No. 262-63 (E.D.N.Y. 2019) ("The [n-word] evinces a hatred and disgust of African Americans and invokes dehumanizing stereotypes that

served to justify centuries of social, economic and political discrimination."); *Mason v. SEPTA*, 134 F. Supp. 3d 868, 875-76 (E.D. Pa. 2015) ("The remark is hardly ambiguous when it comes to racial prejudice, as it has been described as the 'paradigmatic slur' toward African Americans and the 'most socially consequential insult.'"); *Daso v. Grafton Sch., Inc.*, 181 F. Supp. 2d 485, 493 (D. Md. 2002) ("No word in the English language is as odious or loaded with as terrible a history.").

In certain circumstances, courts have found a single use of the n-word can be sufficiently severe to alter the conditions of an African American plaintiff's workplace. For example, in *Castleberry*, the United States Court of Appeals for the Third Circuit found that a single instance of a supervisor using the n-word in person, in front of co-workers and accompanied by threats of termination which ultimately occurred, was sufficiently severe to state a plausible hostile work environment claim. *Id.*, 863 F.3d at 262. However, as the *Castleberry* court explained, "the resolution of [whether a single use of the n-word is sufficient to allege a hostile work environment] is context-specific." *Id.* at 264; *see also Harley v. City of New Jersey City*, No. 16-5135, 2017 WL 3641565, at *4 (D.N.J. Aug. 23, 2017) ("Plaintiff appears to argue that *Castleberry* determined that the use of the 'N-word' is sufficiently egregious to meet the hostile work environment standard in every case . . . . However, *Castleberry* explicitly stated that the 'resolution of th[is] question is context-specific.'" *Id.* at 264.

The alleged context for the use of the n-word in this case is distinguishable from the one in *Castleberry*. Most significantly, Thomas asserts that the individual who directed the slur at him was a third party, Mr. Gannon, rather than a person whose actions could be attributed to his employer. Courts impose on employers a lesser degree of liability for the actions of third parties as compared to their employees or supervisors. *See Vance*, 570 U.S. at 424 (2013) (observing

11

that "[u]nder Title VII, an employer's liability [for harassing conduct] may depend on the status of the harasser"); *U.S. E.E.O.C. v. GNLV Corp.*, No. 06-01225, 2014 WL 7365871, at *13 (D. Nev. Dec. 18, 2014) ("An employer's liability for harassing conduct varies according to whether the harasser is a supervisor, co-worker, or non-employee."). An employer may be liable under Title VII for the conduct of third parties if the employer knew about the conduct and failed to take reasonable remedial action in response. *Peterkin v. Prospect Airport Servs., Inc.*, No. 21-490, 2021 WL 2400753, at *19 (E.D. Pa. June 11, 2021) (citing *Johnson*, 147 F. App'x at 286). The United States Court of Appeals for the Fourth and Fifth Circuits have held an employer may be liable for hostile work environments created by co-workers and third parties "if it knew or should have known about the harassment and failed to take effective action to stop it . . . [by] respond[ing] with remedial action reasonably calculated to end the harassment." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008).

Also, courts in the Third Circuit have recognized that isolated or occasional use of a slur by a non-supervisor, although objectionable, does not plausibly allege a hostile work environment. *See Riley v. Borough of Eddystone*, No. 24-1835, 2024 WL 4844794, at *3 (E.D. Pa. Nov. 20, 2024) (dismissing hostile work environment claim where plaintiff alleged three comments by two co-workers over the course of two-and-a-half months, including one use of the n-word, because "none [of the comments] were made by supervisors, and no allegations about the circumstances or context of the comments suggest that they were threatening or humiliating, that they interfered with [the plaintiff's] work, or that they otherwise changed the conditions of his employment."); *see also Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 602 (D.N.J. 2016) (dismissing Title VII and New Jersey Law Against Discrimination hostile work environment claims based on one instance of a white co-worker calling the black plaintiff a

"niglet," noting that "[w]hile the insult at issue here was clearly a racist slur and directed at the plaintiff, it was not uttered by a supervisor . . . but by a co-worker[.]"). Thomas's claim that a third party used a racial slur on a single occasion likewise fails to allege a plausible hostile work environment claim. *See Faragher*, 524 U.S. at 788 ("isolated incidents (unless extremely serious) will not amount to [harassment]."); *Newman v. Point Park Univ.*, No. 20-204, 2022 WL 969601, at *28 (W.D. Pa. Mar. 31, 2022) (dismissing plaintiff's hostile work environment claims where she failed, *inter alia*, to "plausibly allege that she faced any sort of targeted, derogatory comments over a lengthy period of time, such that it affected Plaintiff's work performance."). Because Thomas's claim is undeveloped, it must be dismissed, but the Court will grant him leave to amend this claim if he can assert additional facts to support it under these standards.

    **3.    Retaliation**

Next, Thomas asserts he was subject to retaliation for reporting Mr. Gannon's racist and abusive behavior and for "complaining internally and . . . emailing HR and corporate regarding discrimination, lack of documentation, and unfair treatment." (Compl. ¶ 38.) Title VII prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes, or because he made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes. *See* 42 U.S.C. § 2000e-3; *Allstate Ins. Co.*, 778 F.3d at 449. A plaintiff states a retaliation claim if he "pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) [he] engaged in conduct protected by [the statute]; (2) the employer took adverse action against [him]; and (3) a causal link exists between [his] protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789; *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

13

Accepting all inferences in Thomas's favor, he has alleged the elements of a retaliation claim. His written statement regarding the August 16 incident reported racist comments and abuse by Mr. Gannon, which Thomas believed violated his rights. (Compl. ¶ 32.) He also sought to report the alleged discrimination and unfair treatment to HR. (Compl. ¶ 38.) Thomas alleges he sought to oppose conduct that he believed was prohibited by Title VII and thus engaged in protected conduct. *See* 42 U.S.C. § 2000e-3; *Allstate Ins. Co.*, 778 F.3d at 449; *see also Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) ("[P]rotesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct . . . Thus, 'a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'") (citations omitted). He also alleges he was subsequently suspended and terminated, and therefore suffered adverse employment actions that satisfy the second element of a retaliation claim. Finally, he plausibly alleges a causal connection between his protected conduct and the adverse employment actions, satisfying the third element. He asserts that he was suspended the day after reporting Mr. Gannon's racial harassment and terminated less than a week later. (Compl. ¶¶ 18-22.) His termination also occurred within days of him reporting his discriminatory treatment to HR. This kind of close temporal proximity between protected conduct and adverse employment actions by itself can be sufficient to suggest a retaliatory motive. *See Nuness*, 221 F. Supp. 3d at 606 (finding sufficient temporal proximity where plaintiff complained of co-worker's racist conduct and was terminated 12 days later); *Blakney* v. *City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) (noting that "a temporal proximity of two days [between protected conduct and the adverse employment action] is unusually suggestive of causation" and sufficient by itself to establish causation), quoting *Jalil v. Avdel*

14

*Corp.*, 873 F.2d 701, 708 (3d Cir. 1989).  Moreover, Thomas alleges that he did not initially face serious discipline as a result of the August 16 incident itself but only did so after he engaged in protected conduct, suggesting that this was the cause of his suspension and termination.  These assertions plausibly allege a retaliation claim against Solera and this claim will proceed past statutory screening.

      **B.**    **State Law Claims**

           **a. Defamation**

Thomas asserts a defamation claim against Defendants Solera, Kotwas, and Hamilton. "To state a claim for defamation under Pennsylvania law, a plaintiff must allege the following elements: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; and (5) the understanding by the recipient of it as intended to be applied to the plaintiff." *White v. Greene*, No. 23-3113, 2023 WL 5962096, at *5 (E.D. Pa. Sept. 12, 2023), citing *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) and 42 Pa. Cons. Stat. § 8343(a).  Thomas asserts that Defendants Solera, Kotwas, and Hamilton "falsely stated or implied that Plaintiff 'randomly entered a female resident's room' without consent or policy basis." (Compl. ¶ 41.)  He contends "[t]hese false statements harmed Plaintiff's professional reputation and employability." (*Id.* ¶ 42.)  Thomas's defamation claim is undeveloped and therefore not plausible.  In particular, he does not allege any facts regarding publication of the alleged defamatory statements, including to whom they were made. *See Suppan v. Kratzer*, 660 A.2d 226, 229 (Pa. Commw. Ct. 1995) (where plaintiff "does not allege to whom the allegedly defamatory statement was published, he has not properly alleged defamation.  An allegation which merely avers that the alleged defamatory statement was published to a third person is

15

defective."); *see also Martin v. Impact Health*, No. 23-4447, 2024 WL 3512069, at *4 (E.D. Pa. July 23, 2024) ("To meet the "publication" requirement, Plaintiffs must allege facts that establish that Defendant expressed the defamatory statement to a "third party"—that is, a party other than the plaintiff.") (citing *Suppan*, 660 A.2d at 229). He also fails to allege that the recipient understood its defamatory meaning and understood it as intended to be applied to Thomas. Because Thomas fails to plead the necessary factual elements, his defamation claim is not plausible. However, the Court will grant him leave to amend if he can allege additional facts to support his claim.

### b. Negligent and Willful Failure to Investigate

Thomas contends Solera failed to investigate his claims of discrimination against Mr. Gannon. However, failure to investigate is not a standalone cause of action but is subsumed within Thomas's discriminatory termination claim. *See Kehoe v. Hard Rock Hotel & Casino, Atl. City*, No. 24-490, 2024 WL 471610, at *2 (D.N.J. Feb. 2, 2024) ("A failure to investigate a charge of discrimination by an employee, however, is not a separate cause of action. Rather, it might be a theory or evidence of discrimination"); *Tafuto v. New Jersey Inst. of Tech.*, 2011 WL 3163240, at *5 (D.N.J. July 26, 2011) (characterizing a "failure to investigate claim" as a theory of sexual discrimination under Title IX). Indeed, Thomas alleges that Kotwas's handling of the investigation of the August 16 incident reflected racial bias, citing the failure to investigate as discriminatory conduct. (Compl. ¶ 36) (stating that "Defendants disciplined and terminated Plaintiff based on a false complaint from a resident's husband, without evidence, while failing to discipline non-Black/female employees for similar or worse conduct."). The Court therefore will dismiss Thomas's claim based on failure to investigate as duplicative of his discrimination claim.

### c. Wrongful Termination

Finally, Thomas alleges a Pennsylvania common law claim for wrongful termination. (Compl. at 9.) As an initial matter, common law claims for wrongful termination are generally pre-empted when a statutory remedy exists. *See Murray v. Commercial Union Ins. Co.,* 782 F.2d 432, 437 (3d Cir. 1986). "[A] common law claim will not be preempted by the PHRA if it is factually independent of the discrimination claim." *Keck v. Com. Union Ins. Co.,* 758 F. Supp. 1034, 1038 (M.D. Pa. 1991). Because the facts giving rise to Thomas's Pennsylvania common law claim are the same as those asserted in support of his PHRA wrongful termination claim, and because that statute provides a remedy for Thomas's allegations of wrongful termination, the Pennsylvania common law claims are preempted. *See Haaijer v. Omnova Sols., Inc.*, No. 18-942, 2018 WL 6981178, at *13 (M.D. Pa. Dec. 18, 2018) (quoting *Clay*, 559 A.2d at 918 that "[t]he PHRA preempts parties from bringing common law claims for wrongful discharge based on claims of discrimination.") *report and recommendation adopted*, 2019 WL 137603 (M.D. Pa. Jan. 8, 2019).

Moreover, Thomas's claim is not plausible because Pennsylvania does not recognize a common law action for wrongful termination of at-will employment, *Weaver v. Harpster*, 975 A.2d 555, 562 (Pa. 2009), and there is no allegation that Thomas was anything other than an at-will employee. *See McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000) ("[T]he presumption of all non-contractual employment relations is that it is at-will and that this presumption is an extremely strong one.") (emphasis in original); *Heidorn v. Church*, 2016 WL 4651382, at *2 (Pa. Super. Ct. June 22, 2016) ("An employee may bring a cause of action for termination only in the most limited circumstances, namely 'where the termination violates a clear mandate of public policy.'"); *see also Bennett v. Republic Servs., Inc.*, 179 F.

17

Supp. 3d 451, 456 (E.D. Pa. 2016) ("In Pennsylvania 'absent a statutory or contractual provision to the contrary . . . either party [may] terminate an employment relationship for any or no reason.' . . . An employer's right to terminate an at-will employee has been characterized as 'virtually absolute.'") (citation omitted). Because no set of facts would permit Thomas to allege a common law wrongful termination claim that is not preempted by the PHRA, this claim will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Thomas leave to proceed *in forma pauperis* and dismiss the Complaint with the exception of Thomas's retaliation claim against Solera. Thomas may opt to proceed only on that claim or file an amended complaint to attempt to cure the defects the Court has identified in his other claims that are dismissed without prejudice. His Title VII claims against Defendants Kotwas, Hamilton, and Dupree, his wrongful termination claim under Pennsylvania law, and his claim for negligent and willful failure to investigate will be dismissed with prejudice. An appropriate order follows, which contains additional instructions as to amendment.

BY THE COURT:

_____
**MARY KAY COSTELLO, J.**