IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NA'QUAN THOMAS,    :<br>    Plaintiff,    :<br>    :<br>v.    :<br>    :<br>SOLERA SENIOR LIVING, LLC, *et al.*,  :<br>    Defendants.    : | CIVIL NO. 25-4944 |

MEMORANDUM

COSTELLO, J.                                                                                                                DECEMBER 19, 2025

In a prior Memorandum and Order, the Court granted Na'Quan Thomas leave to proceed *in forma pauperis* and dismissed without prejudice the Complaint he filed against Solera Senior Living ("Solera") and three Solera employees. *See Thomas v. Solera Senior Living LLC*, No. 25-4944, 2025 WL 2901065 (E.D. Pa. Oct. 10, 2025) ("the October Memorandum"). His retaliation claims against Solera were determined to be plausible and the remaining claims were dismissed.[1] For the following reasons, Thomas's retaliation claims against Solera pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1981 will now proceed to service. The Court will dismiss the remaining claims and Defendants with prejudice.

---

[1] Thomas's Title VII claims against the three Solera employees, his Pennsylvania common law wrongful termination claim, and his claim for negligent and willful failure to investigate were dismissed with prejudice. *Thomas*, 2025 WL 2901065, at *8. His other claims against Solera under Title VII, § 1981, and Pennsylvania Human Relations Act ("PHRA") employment discrimination and hostile work environment theories and his state law defamation claim were dismissed without prejudice. *Id.*

I.      **FACTUAL ALLEGATIONS**[2]

Thomas names Solera as the sole Defendant in the Amended Complaint. He largely realleges the same facts asserted in his initial Complaint, which the Court recites here briefly. During the events giving rise to his claims, Thomas was employed as a Resident Assistant at Echo Lake Senior Living ("Echo Lake"), a community operated by Solera. (Am. Compl. ¶¶ 8, 10). On the evening of August 16, 2025, Thomas responded to a call from a resident named Mrs. Gannon, who requested help changing into her pajamas. (*Id*. ¶¶ 10-11.) Thomas asked Mrs. Gannon if she would prefer to wait for a female aide, but she declined. (*Id*. ¶ 12.) When Thomas, who is black, began assisting Mrs. Gannon, her husband, Mr. Gannon, became irate, yelled and cursed at Thomas, called him the n-word with an expletive, and slammed a door into Thomas's leg. (*Id*. ¶¶ 13-15.) Two other employees witnessed the incident and later provided written statements corroborating Thomas's account to HR as part of an investigation related to Thomas's subsequent suspension. (*Id*. ¶ 16.)

When Thomas reported for work on August 19, 2025, he was pulled aside by his supervisor, Rebecca Kotwas, who told him that Mr. Gannon had "reported" him. (*Id*. ¶¶ 17-18). Thomas alleges that Kotwas "did not ask for Plaintiff's side, did not inquire about witnesses, and did not review the incident before restricting him from working on the first floor." (*Id*. ¶ 18.) After Thomas insisted, Kotwas allowed him to write a statement. (*Id*. ¶ 19.) Later that day, Thomas submitted a statement via email titled "Formal HR Complaint – Discrimination, Retaliation, and Mishandling of Resident Report" in which he "documented the racial slurs, the

---

[2] The factual allegations set forth in this Memorandum are taken from the Amended Complaint. (ECF No. 7.) The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

physical aggression, the witnesses, and Rebecca's one-sided handling of the incident." (*Id*. ¶¶ 20-21.)

The following day, August 20, 2025, Shanell Hamilton, Echo Lake's director of human resources, notified Thomas before his scheduled shift that he was "suspended pending investigation." (*Id*. ¶ 22.) Over the next several days, Thomas called and emailed Hamilton daily, inquiring as to the reason for the suspension and the status of the investigation, but she ignored his attempts to contact her. (*Id*. ¶¶ 23-27.) Thomas also "reported [Hamilton's] conduct to Corporate HR Director Lewana Dupree . . . noting that HR was ignoring his written demands and blocking all communication." (*Id*. ¶ 28.) Finally, Thomas received a letter from Solera, dated August 25, 2025, terminating his employment. (*Id*. ¶ 29.)

Thomas asserts claims of retaliation pursuant to Title VII and § 1981.[3] (*Id*. ¶¶ 33-35.) He also alleges claims for negligent and willful failure to investigate, wrongful termination under Pennsylvania common law, and a claim for "emotional distress and reputational harm." (*Id*. ¶¶ 36-40.) Thomas seeks back and front pay, monetary damages, a declaration that Solera violated his rights under Title VII and § 1981,[4] injunctive relief requiring Solera to modify its HR complaint policies, and attorney's fees and costs. (*Id*. at 6-7.)

---

[3] The Amended Complaint does not reallege any claims under the PHRA.

[4] Declaratory relief is unavailable to adjudicate past conduct, so Thomas's request for this relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

## II.     STANDARD OF REVIEW

Because Thomas is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* amended complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that amended complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of the Amended Complaint liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'"  *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).  However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala*, 704 F.3d at 245).

III.   DISCUSSION

    A.   **Claims Subject to Dismissal**

The Court previously advised Thomas that if he chose to amend his complaint, he "may not assert a claim that has already been dismissed with prejudice."  (ECF No. 6 ¶ 7.)  Notwithstanding this clear direction, the Amended Complaint reasserts Thomas's Pennsylvania common law wrongful termination claim and his claim for negligent and willful failure to investigate, which the Court previously dismissed with prejudice.  *Thomas*, 2025 WL 2901065, at *7.  The reasserted claims are again dismissed with prejudice for the reasons stated in the Court's earlier Memorandum.  Thomas also asserts a new claim for emotional distress and reputational harm.  As discussed further below, this claim is not plausible.

Thomas asserts that Solera's conduct, "including ignoring racial harassment, suspending Plaintiff without cause, and abruptly terminating him — caused severe emotional distress, anxiety, humiliation, and loss of professional standing."  (Am. Compl. ¶ 40.)  It is not entirely clear what cause of action Thomas is asserting based on these allegations.  Because he alleges that Solera's actions caused him, among other things, "severe emotional distress [and] anxiety," the Court understands him to assert a claim for intentional infliction of emotional distress ("IIED").  *See Mala*, 704 F.3d at 244 (stating that a court must liberally construe a *pro se* litigant's pleadings and apply the relevant law, "irrespective of whether the *pro se* litigant has mentioned it by name.").[5]

---

[5] In Pennsylvania, recovery for a claim of negligent infliction of emotional distress ("NIED") is limited to instances where a litigant suffers emotional distress as a result of (1) a direct physical injury; (2) being within the zone of danger of a negligent act; or (3) witnessing an accident causing serious injury to a close family member.  *See Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 459 (E.D. Pa. 2014).  The litigant must also allege "physical manifestations of their emotional suffering" to recover damages.  *See Bernstein v. Serv. Corp. Int'l*, No. 17-4960, 2018 WL 6413316, at *5 (E.D. Pa. Dec. 6, 2018).  Even liberally construing the factual

"To establish an IIED claim under Pennsylvania law, a plaintiff must [allege] that (1) the defendant's conduct was extreme or outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the plaintiff's distress is severe." *Doe v. The Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799, 826-27 (E.D. Pa. 2017). The defendant's conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'" *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005) (quoting Restatement (Second) of Torts § 46 cmt. d)). Courts in this district have "repeatedly found [that a]s reprehensible as deliberate discrimination can be, . . . discrimination alone does not meet the extreme and outrageous conduct standard necessary to state a claim for [IIED]." *Doe*, 270 F. Supp. 3d at 827 (collecting cases).

Nothing alleged in the Amended Complaint is so extreme and outrageous as to rise to the level of a plausible IIED claim. As stated, courts generally dismiss IIED claims that are based on an employer's alleged discriminatory or retaliatory conduct. *See, e.g., Vu v. Kott*, No. 23-3336, 2024 WL 2802849, at *5 (E.D. Pa. May 31, 2024) (dismissing IIED claim based on plaintiff's wrongful termination, the defendant's discriminatory action, and its publication of an inter-office memorandum accusing the plaintiff of falsifying reports and engaging in deceitful acts because the allegations "fail to meet the high threshold of outrageous in character and beyond all bounds of decency"); *Ellis v. Genesis Healthcare Corp.*, No. 18-5536, 2019 WL 1303981, at *4 (E.D. Pa. Mar. 20, 2019) (dismissing IIED claim premised on a racially discriminatory termination); *Bogle v. City of Phila.*, No. 15-0394, 2015 WL 4159443, at *5 (E.D.

---

allegations in Thomas's Amended Complaint, they do not plausibly allege a claim under one of these three theories of recovery for NIED.

6

Pa. July 9, 2015) ("Courts applying Pennsylvania law have repeatedly found that allegations of race and gender discrimination, even when coupled with retaliatory conduct, do not meet the 'extreme and outrageous conduct' standard necessary to state a claim of IIED.")  Thomas's allegation that he suffered racial discrimination, retaliation, and mishandling of his HR complaint is not the type of extreme and outrageous conduct that is actionable in an IIED claim.  *See Cheney v. Daily News L.P.*, 654 F. App'x 578, 583-84 (3d Cir. 2016) (concluding that an article suggesting that the plaintiff was involved in a sex scandal did not allege an IIED claim and stating that "Pennsylvania courts have found extreme and outrageous conduct only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children.").  Accordingly, Thomas's IIED claim is dismissed with prejudice.[6]

      B.    **Retaliation Claims**

Thomas realleges retaliation claims under Title VII and § 1981.  The Court previously determined his Title VII retaliation claim to be plausible and will now serve it for a responsive pleading.  As the Court noted in the prior Memorandum, in employment discrimination cases, § 1981 claims are subject to the same analysis as discrimination claims under Title VII.  *Thomas*, 2025 WL 2901065 at *3 n.3 (citing *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009)).  Section 1981 claims are narrower in scope than Title VII claims, however, as they are limited to challenging private acts of race discrimination in connection with making and enforcing contracts.  *See Anjelino v. New York Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999) (Section 1981, "on its face, is limited to issues of racial discrimination in the making and enforcing of

---

[6] To the extent Thomas seeks to reassert a defamation claim based on his allegations of "humiliation and loss of professional standing," it is dismissed for the same reasons noted in the Court's October Memorandum.  *See Thomas*, 2025 WL 2901065 at *7.

contracts"). This includes allegations of interference with at-will employment, such as Thomas's employment with Solera. *See McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d 695, 700 (E.D. Pa. 2002). As under Title VII, to assert a retaliation claim pursuant to § 1981, a plaintiff must allege facts sufficient to show that: (1) the plaintiff engaged in a "protected activity," (2) the defendant took an adverse employment action against the plaintiff, and (3) a causal connection existed between the plaintiff's protected activity and the adverse action. *Castleberry v. STI Group*, 863 F.3d 259, 267 (3d. Cir. 2017). As discussed in the Court's prior Memorandum, Thomas alleges the elements of a retaliation claim arising from his attempt to report racial discrimination to Solera's management and HR. *Thomas*, 2025 WL 2901065 at *6. Because Thomas alleges that Solera's retaliation involved interference with his at-will employment (*i.e.* his suspension and termination), he asserts a plausible retaliation claim under § 1981, which will also be served for a responsive pleading.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss the Amended Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Thomas's retaliation claims against Solera pursuant to Title VII and § 1981 will be served for a responsive pleading.  The remaining claims and Defendants will be dismissed with prejudice because the Court concludes that further attempts at amendment would be futile.  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by a *pro se* litigant would be futile when litigant "already had two chances to tell his story").  An appropriate Order follows, which directs service of the claims passing statutory screening.

BY THE COURT:

_____
**MARY KAY COSTELLO, J.**